## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA I. ROSE, | ) | CASE NO. 1:22-CV-00244-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Defendant. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Plaintiff Angela Rose ("Ms. Rose") seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB"), Period of Disability ("POD"), and Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated 09/02/2022). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.    PROCEDURAL HISTORY

This is Ms. Rose's second pursuit of disability benefits. First, on May 4, 2018, Ms. Rose filed applications for DIB and POD, alleging a disability onset date of March 1, 2018. (Transcript ("Tr.") 59).[1] Ms. Rose's applications primarily related to her conditions of systemic lupus erythematosus ("SLE"), plantar fasciitis, and migraines. (Tr. 61). An administrative law judge ("ALJ") issued an unfavorable decision on November 1, 2019, finding that Ms. Rose is not

---

[1] The Transcript of the Proceedings before the Social Security Administration for this case can be located at ECF Doc. No. 5 on CM/ECF.

disabled. (Tr. 56, 66).

Second, on February 14, 2020, Ms. Rose filed applications for DIB, POD, and SSI, alleging a disability onset date of April 1, 2018. (Tr. 172, 174). Ms. Rose's applications again related to her conditions of SLE, plantar fasciitis, and migraines. (Tr. 18). The Social Security Administration ("SSA") denied Ms. Rose's applications initially and upon reconsideration, and Ms. Rose requested a hearing before an ALJ. (Tr. 103-12, 114-29, 130-32). On February 4, 2021, the ALJ held a hearing via telephone during which Ms. Rose, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 31-55). On February 18, 2021, the ALJ issued a written decision finding that Ms. Rose is not disabled.[2] (Tr. 12-24). The ALJ's decision became final on December 21, 2021, when the Appeals Council declined further review. (Tr. 1-6).

On February 12, 2022, Ms. Rose filed her Complaint to challenge the Commissioner's final decision. (ECF Doc. No. 1). The parties have completed briefing in this case. (ECF Doc. Nos. 9, 11, and 12). Ms. Rose asserts the following four assignments of error:

(1) The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived his authority from Andrew Saul was constitutionally defective.

(2) The ALJ committed harmful error when he found that there was no new and material evidence of disability and failed to give a fresh look as required by *Earley*.

(3) The ALJ committed harmful error when he failed to conduct a meaningful review of Listing 14.02 regarding [Ms.] Rose's [SLE] and find that [Ms.] Rose satisfied the Listing at Step Three of the Sequential Evaluation.

(4) At Step Four of the Sequential Evaluation, the ALJ's RFC was not supported by substantial evidence when he erroneously found that [Ms.] Rose could still perform her past work as customer service representative and collection clerk.

(ECF Doc. No. 9, PageID # 443-44).

---

[2] The record indicates that the same ALJ decided both sets of Ms. Rose's disability claims. (*See* Tr. 24, 66).

III.     **BACKGROUND**

    A.     <u>**Personal, Educational, and Vocational Experience**</u>

Ms. Rose was born in March 1969 (Tr. 172), and she was 49 years old on the alleged onset date (*id.*). Ms. Rose has a high school education and lives with her minor son. (Tr. 42, 45). Ms. Rose's past relevant employment includes work as a customer service representative and collections agent. (Tr. 45).

    B.     <u>**Relevant Hearing Testimony**</u>

        *1.*     ***Ms. Rose's Testimony***

Ms. Rose testified that, since November 2019 (*i.e.*, since the ALJ denied her prior disability claims), her conditions have worsened. (Tr. 34-35). Ms. Rose testified that it is difficult for her to get around, that her pain has worsened, that she is not able to sleep, that her legs swell throughout the day, and that she elevates her legs to help with the swelling. (Tr. 35, 42). Ms. Rose testified that she struggles to sit or stand for long periods of time, that her body aches, and that she experiences "constant" headaches. (Tr. 36). Ms. Rose later testified that she has migraines "every other day[,]" but then testified that the frequency of her migraines "just depends; I can't really say how often." (Tr. 40-41). Ms. Rose testified that she treats her migraines with Ibuprofen. (Tr. 41).

   Ms. Rose testified that her daughter now needs to accompany her to the grocery store, and that Ms. Rose  is afraid of falling because her knee goes out at times. (Tr. 36). When asked what she thought her challenges would be if she had to work an eight-hour workday, Ms. Rose responded that she would have difficulty concentrating, sitting or standing for long periods of time, and would feel fatigued. (Tr. 37-39). Regarding her fatigue, Ms. Rose testified that she feels exhausted by noon each day, and that she takes thirty-minute naps. (Tr. 39).

Regarding her daily activities, Ms. Rose testified that it takes her "some time to get [her]self together" in the morning, and that – on a "good" day – she prepares her son breakfast.

(Tr. 42). Ms. Rose also testified that she spends time during the day lying down on her couch and sitting in her recliner, but that she gets up during the day "because [she has] to do some type of moving around so [her] body . . . [doesn't] get stiff." (Tr. 43).

### 2.  *Vocational Expert's Testimony*

The ALJ asked the VE to consider a person with Ms. Rose's age, education, and vocational background who was limited in the way in which the ALJ determined Ms. Rose to be limited. (Tr. 45-46). The VE opined that such an individual could perform Ms. Rose's past work as a customer service representative and collections agent. (*Id.*).

Relevant to this proceeding, during cross-examination, Ms. Rose's counsel questioned the VE about the definition of "reaching" in relation to "fingering[.]" Essentially, Ms. Rose's counsel appeared to suggest that a person cannot accomplish fingering without also reaching, and counsel was frustrated and/or dissatisfied by the VE's attempt to distinguish the two actions. (Tr. 47-50). The ALJ eventually interjected and told Ms. Rose's counsel that he was becoming argumentative and was "badgering" the VE. (Tr. 50-52). Ms. Rose's counsel responded that he had a right to cross-examine the VE. (Tr. 52). Ms. Rose's counsel then continued to question the VE about the definition of "reaching[,]" and the ALJ warned Ms. Rose's counsel that he would end the hearing if the badgering continued. (Tr. 52-53). After the VE continued to answer Ms. Rose's counsel's questions –  and Ms. Rose's counsel continued to be frustrated and/or dissatisfied with the VE's answers – Ms. Rose's counsel told the VE she was "fighting common sense here[,]" at which point the ALJ interrupted and asked Ms. Rose if she had anything else to say (she did not) and ended the hearing. (Tr. 53-54).

### C.  <u>Relevant Medical Evidence</u>

As previously noted, the ALJ denied Ms. Rose's prior disability claims on November 1, 2019. (Tr. 56, 66). Here, the ALJ noted that Ms. Rose's "current Title II claim is barred by the

doctrine of res judicata through November 1, 2019[.]"  (Tr. 15). The ALJ then addressed the

pending applications for DIB, POD, and SSI since November 2, 2019. (Tr. 15-24). The ALJ

summarized Ms. Rose's health records and symptoms as follows:

> At the time of application, the claimant stated that lupus and high blood pressure limited her ability to work (B2E/2). At the hearing, the claimant testified that since November 2019, her ability to get around is worse. She cannot walk as far, and since December 2019 her daughter has to go grocery shopping with her. She has inflammation of the legs "a lot" and they hurt "a lot." Her legs swell daily and she elevates her legs because her ankles swell daily. The claimant further testified that she is unable to sleep. She could not work eight hours a day due to fatigue. She has "constant" headaches described as "off and on" throughout the day. She has migraine headaches every other day that last about one to two hours.

> . . .

> In terms of the claimant's alleged physical limitations and symptoms including pain, swelling, and fatigue, a review of the new medical evidence in the current record shows that on November 27, 2019, the claimant returned to see her rheumatologist, Van Warren, MD, at University Hospitals, about her [SLE]. The claimant reported "all over" pain that she rated at 6/10. The claimant also reported significant fatigue and some transient morning stiffness that lasted about 10 minutes in the morning. The examination of the lungs, heart, abdomen, and extremities was benign. The musculoskeletal examination did not show any joint effusions. There was diffuse tenderness to light touch in the upper extremities and proximal lower extremities. Dr. Warren continued Hydroxychloroquine Sulfate (Plaquenil) 200 mg and he started Prednisone 10 mg for seven days (B9F/4-6).

> On December 3, 2019, the claimant returned to see Amelita Quedding-Pizarro, MD, at University Hospitals, for a physical examination. The claimant reported that she was doing "well" overall and had no particular complaints. The claimant denied leg swelling, headaches, and sleep problems. On examination, the claimant was alert and well groomed. Her gait was normal and steady and she had 5/5 (normal) motor strength. The extremities showed full range of motion and there was no lower extremity edema (B8F/20-24).

> On February 18, 2020, the claimant saw Dr. Quedding-Pizarro because she was not sleeping well. The claimant denied leg swelling and headaches and she said that her muscle aches or joint pains were "not different from usual." On examination, the claimant was alert and well groomed. Her gait was normal and steady and sensation was intact. All extremities showed full range of motion and there was no lower extremity edema. Dr. Quedding-Pizarro told the claimant to take a full tablet of Trazodone 50 mg every night for at least two weeks to see if it was effective. The claimant's other medications included Hydroxychloroquine Sulfate (Plaquenil) and Ibuprofen "as needed" for pain/headache (B8F/15-19).

On April 14, 2020, the claimant had a virtual visit with Dr. Quedding-Pizarro. The claimant denied leg swelling and headaches and she said that her muscle aches or joint pains were "not different from usual." On examination, the claimant was alert and she looked "rested." The claimant told Dr. Quedding-Pizarro that she had enough refills of Trazodone. Dr. Quedding-Pizarro noted that the claimant's [SLE] was "stable" and that the claimant would be seeing Dr. Warren, her rheumatologist, soon (B8F/6-9).

On April 20, 2020, the claimant had a telephone visit with Dr. Warren. The claimant reported pain in her joints that improved with Ibuprofen. She also reported stiffness that improved after activity. She was taking Hydroxychloroquine Sulfate (Plaquenil) 200 mg twice daily and Ibuprofen 800 mg three times per day "as needed." Dr. Warren continued the claimant's medications (B9F/1-3).

On September 24, 2020, the claimant returned to see Dr. Quedding-Pizarro. The claimant's fiancé passed away suddenly in July 2020 and she and her 10-year-old son were having a hard time. The claimant denied leg swelling and headaches and she said that her muscle aches or joint pains were "not different from usual." On examination, the claimant was alert and well groomed. Her affect was normal though she was tearful. Her gait was normal and steady and sensation was intact. All extremities showed full range of motion and there was no lower extremity edema (B8F/1-5).

. . .

The claimant testified that her legs swell daily. However, as recounted above, the claimant consistently denied leg swelling and the examinations consistently show "no" edema of the lower extremities. The claimant testified that she is unable to sleep. However, as recounted above, the claimant's sleep problems are adequately treated with Trazodone. The claimant testified that she could not work eight hours a day due to fatigue. On November 27, 2019, the claimant reported significant fatigue and some transient morning stiffness that lasted about 10 minutes in the morning; however, the record fails to show that the claimant repeated this complaint after November 27, 2019. In addition, on examinations the claimant was consistently "alert" (see above). The claimant testified about "constant" headaches and migraine headaches that occur every other day, but the medical evidence of record indicates that the claimant consistently denied headaches (see above). From all of this, the undersigned finds that the claimant's symptoms and limitations are not as severe as alleged.

(Tr. 20-21).

### D.     Opinion Evidence

On November 27, 2019, Dr. Warren issued a letter stating:

Angela Rose has [SLE] with inflammatory arthritis, iron deficiency anemia. She has recurrent pain involving her shoulders, hands, and feet. She more recently has noted

significant pain in the heels with weightbearing. She has transient morning stiffness that improves with activity but recurs after resting. She notes significant fatigue and has difficulty maintaining [her] activities that her home [sic] such as standing, walking, repetitive movements of the upper extremities. She also notes bilateral lower extremity swelling for which she has been wearing support hose stockings.

Examination is remarkable for benign lungs, heart, and abdomen. The musculoskeletal examination does not show any joint effusions. There is diffuse tenderness in the forearms, proximal upper extremities, upper back, and thighs. She has a normal gait. There is preserved muscle strength in the lower extremities.

Currently she is unable to maintain any gainful employment due to restrictions in activities of her upper extremities and limited ambulation or standing. She is referred for functional capacity testing for further evaluation.

(Tr. 246). Despite the referral for functional capacity testing, Ms. Rose did not undergo that testing. (Tr. 41).

### E.     State Agency Medical Consultants

#### 1.     *Gary Hinzman, M.D.*

At the initial level, Dr. Hinzman reviewed Ms. Rose's file on May 22, 2020. (Tr. 73-78, 79-84). Dr. Hinzman indicated that he reviewed Dr. Warren's letter dated November 27, 2019, but he found that Dr. Warren's "opinion is not supported by any clinical data[,]" that it contrasts with other evidence in the record, and that it lacks substantial support, rendering it less persuasive. (Tr. 75, 81). Dr. Hinzman then adopted the RFC from the ALJ's prior decision, citing Acquiescence Ruling ("AR") 98-4 and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). (Tr. 77, 83).

#### 2.     *Leanne Bertani, M.D.*

At the reconsideration level, Dr. Bertani reviewed Ms. Rose's file on September 25, 2020. (Tr. 87-92, 93-98). Dr. Bertani agreed with Dr. Hinzman's conclusions, noting that "[p]rior administrative medical findings from the initial level are supported by the overall evidence. No changes or worsening alleged at the recon level and the overall evidence continues to support the initial level RFC dated 05/22/2020." (Tr. 91, 97).

## IV.     THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.  The claimant has not engaged in substantial gainful activity since November 2, 2019 (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: [SLE], plantar fasciitis, and migraine (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for no climbing of ladders, ropes or scaffolds; up to frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no concentrated exposure to vibration, high background noise, or industrial lighting, as in a factory setting; and no exposure to hazards (heights, machinery, commercial driving) (20 CFR 404.1569a and 416.969a).

6.  The claimant is capable of performing past relevant work as a customer service representative and collection clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from November 2, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 18-23).

## V.      LAW & ANALYSIS

### A.     <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott*

*v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original).

B.    **Standard for Disability**

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits. *See* 20 C.F.R. 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[3]

Consideration of disability claims follows a five-step review process. 20 C.F.R. § 404.1520. First, the claimant must first demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a

_____

[3] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq*., corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). Before considering Step Four, the ALJ must determine the claimant's RFC, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbot*, 905 F.2d at 923.

### C.  **Analysis**

Ms. Rose raises four issues for judicial review. First, Ms. Rose argues that the appointment of former Commissioner Andrew Saul as the Commissioner of the SSA violated the separation of powers and, as a result, the ALJ's decision in this case is constitutionally defective because the ALJ derived his authority from Commissioner Saul. (ECF Doc. No. 9, PageID # 448-452). Second, Ms. Rose argues that the ALJ erred by finding that the record contained no "new" and "material" evidence of disability and, relatedly, that the ALJ erred by failing to give a "fresh look" at her disability claims as required by *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). (*Id.* at PageID # 452-55). Third, Ms. Rose argues that the ALJ erred by failing to conduct a meaningful Step Three analysis, and by failing to find that her SLE satisfied Listing 14.02A. (*Id.* at PageID # 455-61). Fourth, Ms. Rose argues that the ALJ erred at Step Four by determining that she could still perform her past relevant work. (*Id.* at PageID # 461-62). In addition to her captioned assignments of error, Ms. Rose raises several discrete sub-arguments within her assignments of

error, especially within her third assignment of error.[4] For the following reasons, I recommend that the Court overrule Ms. Rose's assignments of error.

### 1. Ms. Rose's First Assignment of Error

As noted, Ms. Rose first argues that the ALJ's decision is constitutionally defective because the ALJ derived his authority from former Commissioner Andrew Saul, whose appointment as Commissioner of the SSA violated the separation of powers. (ECF Doc. No. 9, PageID # 448-51). Counsel for Ms. Rose presented a similar argument in *Mott v. Commissioner of Social Security*, No. 1:21-CV-00010-DAP (ECF Doc. No. 15, PageID # 1478-80), which Judge Polster rejected on the basis of the claimant's lack of standing. *Mott*, 2022 WL 2162803, at *11-14 (N.D. Ohio Apr. 18, 2022), *report and recommendation adopted*, No. 21-CV-010, 2022 WL 1616537 (N.D. Ohio May 23, 2022). Accordingly, to the extent Ms. Rose raises the same arguments here, I recommend that the Court reject Ms. Rose's constitutional challenge for the same reasons set forth in the *Mott* Report and Recommendation previously adopted by the Court. *Id.*

In addition to the almost verbatim argument raised in *Mott*, Ms. Rose supports her constitutional challenge with additional, related arguments. In this regard, Ms. Rose argues that the ALJ lacked oversight and accountability because he was under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate. (ECF Doc. No. 9, PageID # 449-50). Ms. Rose also argues that, when President Biden terminated Mr. Saul as the Commissioner, "there were remarks regarding the effect the Commissioner had on the disability

---

[4] Courts in the Northern District of Ohio have previously cautioned Ms. Rose's counsel to refrain from combining disparate challenges and arguments regarding the sequential disability evaluation together in a single assignment of error. *See, e.g.*, *Overstreet v. Comm'r of Soc. Sec.*, No. 1:21-CV-2062, 2022 WL 15524729, at *11 n.9 (N.D. Ohio Oct. 11, 2022) (citing Case No. 1:21-cv-00556, Doc. 19, at 34 n.7 (filed 3/2/2022); Case No. 5:20-cv-02850, Doc. 19, at 34 n.5 (filed 2/2/2022); Case No. 5:20-cv-01340, Doc. 21, at 26 n.9 (filed 8/16/2021); Case No. 1:20-cv-01186, Doc. 21, at 25 n.8 (filed 8/16/2021)), *report and recommendation adopted*, No. 1:21CV2062, 2022 WL 15522981 (N.D. Ohio Oct. 27, 2022)).

adjudication process[,]" including that Mr. Saul undermined and politicized Social Security benefits. (*Id.* at PageID # 450-51). Ms. Rose asserts that "it can be inferred that the policy adjudication framework and processes established Mr. Saul was the primary and lead reason for President's Biden's dissatisfaction[,]" and that "it appeared that President Biden believed that Mr. Saul had infringed on the constitutional due process right of disability applicants such as [Ms.] Rose." (*Id.* at PageID # 451). Ms. Rose concludes, in part, that "[t]he delegation of authority which was made to the ALJ was constitutionally unsound necessitating a remand of this matter." (*Id.*).

These additional, related arguments do not support a different conclusion than the one the Court reached in *Mott* regarding the claimant's lack of standing because Ms. Rose still has not established that she has suffered compensable harm. *See Mott*, 2022 WL 2162803, at *11-14 (N.D. Ohio Apr. 18, 2022), *report and recommendation adopted*, 2022 WL 1616537, at * 2-4 (N.D. Ohio May 23, 2022); *see also Nitso v. Comm'r of Soc. Sec. Admin.*, No. 4:22-CV-0328-DAC, 2023 WL 348940, at *7-9 (N.D. Ohio Jan. 20, 2023) (rejecting similar arguments made by Ms. Rose's counsel). Consistent with the findings of other courts in the Northern District of Ohio, I conclude that Ms. Rose has failed to establish that she has suffered harm traceable to an unlawful action by the former Commissioner of Social Security, and has accordingly failed to establish standing to pursue this constitutional challenge. *See, e.g.*, *Rhouma v. Comm'r of Soc. Sec.*, 575 F. Supp. 3d 904, 918 (N.D. Ohio 2021) ("Without a harm traceable to an unlawful action by the Commissioner, [plaintiff] does not have standing to challenge the constitutionality of [42 U.S.C.] § 902(a)(3)."); *Catherine J.S.W. v. Comm'r of Soc. Sec.*, No. 3:20-CV-05602-TLF, 2021 WL 5276522, at *8 (W.D. Wash. Nov. 12, 2021) ("Because Plaintiff has not shown any compensable harm fairly traceable to the actions of former Commissioner Saul, under *Collins v. Yellin*, 594 S. Ct. 1761,1788 (2021), the Plaintiff's situation is distinguishable from the plaintiff's claims in *Collins*; Plaintiff has failed to establish standing and the Court need not address the Plaintiff's or Defendant's

additional arguments."); *Helms v. Comm'r of Soc. Sec.*, No. 3:20-CV-589-MOC, 2021 WL 5710096, at *3 (W.D.N.C. Dec. 1, 2021) ("The Court finds that it is implausible that the Commissioner's protection from removal from office, whether constitutional or not, could have affected [the ALJ's] decision or any other aspect of the administrative litigation in a material way. Because Plaintiff has not shown that she was in any way injured by the removal protection provision, she does not have standing to litigate its constitutionality."). Accordingly, I recommend that the Court overrule Ms. Rose's first assignment of error.

### 2. Ms. Rose's Second Assignment of Error

In her second assignment of error, Ms. Rose argues that the ALJ erred by concluding that there was no "new" and "material" evidence of disability, and that the ALJ failed to give a "fresh look" at her disability claims as required by *Earley*. (ECF Doc. No. 9, PageID # 452-55). For the following reasons, I conclude that Ms. Rose's second assignment of error lacks merit.

### i. Drummond, Earley, and AR 98-4(6)

AR 98-4(6) codifies *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), which holds that the SSA "[can]not reexamine issues previously determined in the absence of new and additional evidence or changed circumstances." 1998 WL 283902, at *2 (SSA June 1, 1998). In *Drummond*, the Sixth Circuit held that a "subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842. In 1998, the SSA issued AR 98-4(6), codifying the *Drummond* holding:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is ***new and material evidence*** relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

1998 WL 283902, at *3 (emphasis added); *Drummond*, 126 F.3d at 842. ("When the

Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."). "New evidence" also includes testimony or records demonstrating the claimant's improved health since the prior ruling. *Drummond*, 126 F.3d at 842 (citing *Senters v. Sec'y of HHS*, 1992 WL 78102, at *3, 960 F.2d 150 (6th Cir. 1992); *Lively v. Sec'y of HHS*, 820 F.2d 1391, 1392 (7th Cir. 1987)). Prior ALJ findings, however, do not carry preclusive effect on new claims for different periods of time. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018).

In *Earley*, the Sixth Circuit "significantly walked back administrative application of *Drummond*[.]" *Dilauro v. Comm'r of Soc. Sec.*, No. 5:19-CV-2691, 2021 WL 1175415, at *3 (N.D. Ohio Mar. 29, 2021). In this regard, *Earley* recognized that *res judicata* "rarely would apply" in the Social Security setting, and instructed ALJs to give a "fresh look to a new application containing new evidence . . . cover[ing] a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Earley*, 893 F.3d at 931, 933.

### ii.    *The ALJ's Analysis*

The ALJ set forth the medical evidence provided above, and determined that the record did "not contain new and material evidence establishing a significant change in [Ms. Rose's] physical condition." (Tr. 21). The ALJ explained:

> The clinical findings on examinations have not significantly changed—on examinations, there continues to be tenderness, but the claimant's gait and range of motion continue to be normal. As recounted above, the claimant consistently told Dr. Quedding-Pizarro that her muscle aches or joint pains were "not different from usual." In addition, the course of treatment has not significantly changed. The claimant continues to treat with medications and she continues to see Dr. Warren and Dr. Quedding-Pizarro on a regular basis, and not a frequent basis. Since November 2019, the claimant has not seen a podiatrist about her plantar fasciitis or a specialist about her migraine headaches. From all of this, the undersigned finds that the record does not contain new and material evidence establishing a significant change in the claimant's physical condition and the undersigned finds that the claimant's symptoms and limitations are not as severe as alleged.

(*Id.*). The ALJ also explained that he considered Dr. Warren's letter dated November 27, 2019,

wherein Dr. Warren opined that Ms. Rose "has restrictions in activities of her upper extremities and limited ambulation or standing," and found it unpersuasive. (Tr. 22, 246). The ALJ explained:

> Dr. Warren's medical opinion is not persuasive because the terms "restrictions in activities" and "limited" are not specific, but vague. Furthermore, his medical opinion is not persuasive because it is not supported by the examination findings in the letter of "normal" gait and preserved muscle strength on the lower extremities. Although he notes findings of "diffuse tenderness" of the upper extremities and upper back, he does not explain how this restricts the claimant's activities of the upper extremities. His medical opinion is not persuasive because it is not consistent with the limited course of treatment.

(Tr. 22). The ALJ then addressed the prior RFC, as well as the opinions of the two state agency medical consultants, both of whom adopted the prior RFC. (*Id*.). The ALJ found the opinions of the state agency medical consultants persuasive because:

> the record does not contain new and material evidence establishing a significant change in the claimant's physical condition, and therefore the undersigned is bound by the residual functional capacity in the previous decision. Furthermore, their medical findings are persuasive because the physical examination findings are generally unremarkable and because they are consistent with the limited amount of treatment for any physical impairment.

(*Id*.). Additionally, the ALJ noted that he considered the Third Party Function Report completed by Ms. Rose's sister on January 23, 2021. (*Id.*, Tr. 238-45). The ALJ concluded that:

> In sum, the record does not contain new and material evidence establishing a significant change in [Ms. Rose's] physical or mental condition. Therefore, the undersigned is bound by the previous decision, including the finding that the claimant retains the ability to perform less than the full range of light work as set forth [in the RFC].

(Tr. 23).

### iii.    *Ms. Rose's Arguments*

Ms. Rose argues that the ALJ erred by "blindly relying on *Drummond*," and by not giving her new disability claims a "fresh look for the period of time after November 1, 2019[,]" that is, for the period of time after the ALJ denied her prior disability claims. (ECF Doc. No. 9, PageID # 453). Ms. Rose supports her argument, in part, with citations to her hearing testimony, wherein she testified that her condition has worsened since November 2019. (*Id.* at PageID # 454; Tr. 35-

39). Additionally, Ms. Rose asserts that "the evidence from Dr. Warren was new and material as it discussed her SLE symptoms and limitations[,]" and that Dr. Quedding-Pizzaro's treatment notes reflect "additional problems [that] would have limited her to less than a full range of sedentary work[,]" including headaches, dizziness, fatigue, and feet pain. (*Id.*). Lastly, Ms. Rose asserts that the ALJ failed to "build an accurate and logical bridge between" the evidence and his ultimate decision. (*Id.* at PageID # 455).

### iv.    *Analysis*

Ms. Rose's arguments lack merit. Despite Ms. Rose's arguments to the contrary, the ALJ's decision indicates that he considered the relevant medical evidence, including Dr. Warren's opinion evidence, and did not "blindly" rely on *Drummond,* as Ms. Rose asserts. (ECF Doc. No. 9, PageID # 453; Tr. 20-23). The ALJ considered the relevant treatment notes from Dr. Warren and Dr. Quedding-Pizzaro, as well as the opinion evidence, and ultimately concluded that "the record does not contain new and material evidence establishing a significant change in [Ms. Rose's] physical condition[.]" (Tr. 22).

Additionally, the evidence Ms. Rose cites does not establish that the ALJ's opinion in this regard is not supported by substantial evidence. (*See* ECF Doc. No. 9, PageID # 453-55). While the records show that Ms. Rose continued to receive treatment and experience symptoms related to her conditions, they do not establish – nor has Ms. Rose otherwise shown – that the ALJ's decision lacks the support of substantial evidence. *See Brunner v. Comm'r of Soc. Sec.*, No. 3:14 CV 1880, 2015 WL 5559918, at *10 (N.D. Ohio Sept. 21, 2015) ("Plaintiff's mere disagreement with the ALJ's conclusions is not enough to overcome substantial evidence."); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]"). Regarding Ms. Rose's reliance on her subjective complaints to support her position, "an ALJ is not required to accept a

claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Yee v. Comm'r of Soc. Sec.*, No. 1:21-CV-02067, 2023 WL 121417, at *8 (N.D. Ohio Jan. 6, 2023) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Moreover, as the Commissioner points out (ECF Doc. No. 11, PageID # 489), even if Ms. Rose could establish that the ALJ improperly applied *Drummond* (which the Commissioner disputes), any error was harmless. *See Civitarese v. Comm'r of Soc. Sec.*, No. 1:19-CV-2015, 2020 WL 4366077, at *14 (N.D. Ohio July 30, 2020) (finding that any error in improperly applying *Drummond* was harmless because the claimant did not establish prejudice). Here, the ALJ reviewed the relevant medical evidence and determined that the evidence did not establish a significant change in Ms. Rose's physical or mental condition, and Ms. Rose has not established any resulting prejudice. *Id.* Accordingly, Ms. Rose has not established reversible error.

For the foregoing reasons, I conclude that Ms. Rose's second assignment of error lacks merit.

### 3. Ms. Rose's Third Assignment of Error

In her third assignment of error, Ms. Rose argues that the ALJ erred by failing to conduct a meaningful review of Listing 14.02A and, relatedly, by failing to find that her SLE satisfied that Listing. (ECF Doc. No. 9, PageID # 455). Ms. Rose also argues that, even if she did not satisfy the criteria for Listing 14.02A, the ALJ "failed to consider the combination of her impairments, combined with her headaches, and the resulting pain[,]" which "established that [Ms.] Rose was unable to perform her past relevant work or any substantial gainful activity on a full-time and sustained basis." (*Id.* at PageID # 459). Ms. Rose further argues that the ALJ erred when evaluating her pain in relation to her ability to perform substantial gainful activity on a full-time and sustained basis, and that the ALJ erred by failing to find that her headaches satisfied Listing 11.02. (*Id.* at

Page # 459-50). For the following reasons, I conclude that Ms. Rose's arguments lack merit.

### i.   *Step Three*

At Step Three of the sequential evaluation process, a claimant has the burden to show that she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets all of the criteria of a listed impairment, she is disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. § 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (noting that, without such analysis, it is impossible for a reviewing court to determine whether substantial evidence supported the decision). "A claimant must do more than point to evidence on which the ALJ could have based [her] finding to raise a 'substantial question' as to whether [s]he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641-42 (6th Cir. 2013)). "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

"It is well-established that a reviewing court conducts a holistic review of the ALJ's decision and may look to findings elsewhere in the opinion to support Step Three conclusions." *Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept.

29, 2022) (citing *Immke v. Saul*, 2020 WL 1940849, at *6 (N.D. Ohio April 22, 2020)). "Moreover, it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision." *Anderson* at *2 (citing *Ulman v. Commissioner of Social Security*, 693 F.3d 709, 713-14 (6th Cir. 2012)).

### a.  Step Three: Listing 14.02 - SLE

Listing 14.02 sets forth the criteria for determining whether a claimant's SLE is severe enough to prevent her from doing any gainful activity, regardless of her age, education, or work experience. 20 C.F.R. § 404.1525(a) and (b). Listing 14.00(D)(1)(a) explains that SLE:

> is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.00(D)(1)(a). Relevant to Ms. Rose's argument, to satisfy Listing 14.02A for SLE, a claimant must demonstrate through medical evidence:

> A. Involvement of two or more organs/body systems, with:
>
> > 1. One of the organs/body systems involved to at least a moderate level of severity; and
> >
> > 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.02A.

### b.  Step Three: SSR 19-4p & Listing 11.02 – Headaches

SSR 19-4p provides guidance on how "primary headache disorders" are established and evaluated. *See* SSR 19-4p, 84 Fed. Reg. 44667, 44667-71 (Aug. 26, 2019). SSR 19-4p indicates

that "[p]rimary headache disorder is not a listed impairment[,]" but Listing 11.02 (epilepsy) "is the most closely analogous listed impairment for a [medically determinable impairment] of a primary headache disorder." *Id.* at *44670-71. Regarding Listing 11.02, SSR 19-4p explains, in relevant part:

> While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her [medically determinable impairment](s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [accepted medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* at *44671.

### ii.        *The ALJ's Analysis*

At Step Three, the ALJ concluded that Ms. Rose does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 18). The ALJ explained:

> While the record indicates that the claimant has severe impairments, none reaches the level of severity required by the Listing of Impairments, either singly or in combination. No medical source indicated findings consistent with the record as a whole that would satisfy the severity requirements of one of the listed impairments on 20 CFR Part 404, Subpart P, Appendix 1. In reaching this conclusion, the undersigned considered the findings of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process (Exhibits B4A, B5A, B8A, and B9A) and reached the same conclusion.

In particular, the undersigned considered the claimant's physical impairments under the requirements of Listing 1.02 regarding the major dysfunction of a joint, but the claimant's impairments do not result in the claimant being extremely limited in the ability to walk as required by 1.00B2b.

The undersigned considered the claimant's physical impairments under the requirements of Listing 11.02, but there is no evidence of headaches occurring at the required frequency, despite adherence to prescribed treatment.

The undersigned also considered the claimant's physical impairments under the requirements of Listing 14.02 regarding [SLE] but there is no evidence of involvement of two or more organs/body systems with at least two of the constitutional symptoms or signs; and/or there is no evidence of repeated manifestations of systemic lupus erythematosus with "marked limitation" in activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

(Tr. 18-19).

Regarding Ms. Rose's subjective complaints, the ALJ explained the two-step process for evaluating a claimant's symptoms, and concluded that Ms. Rose's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Ms. Rose's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20). The ALJ then indicated that, "[i]n particular, [Ms. Rose's] allegations are out of proportion to the medical evidence and other evidence[,]" and then proceeded to address the medical evidence set forth above. (*Id*.).

### iii.     Ms. Rose's Arguments

Regarding Listing 14.02A, Ms. Rose argues that "[t]he combination of her musculoskeletal and neurological problems, with musculoskeletal involved to at least a moderate level of severity accompanied by significant fatigue satisfied the criteria of Listing 14.02A." (ECF Doc. No. 9, PageID # 457). In support of her argument, Ms. Rose cites: (1) Dr. Warren's letter dated November 27, 2019 (Tr. 246) and treatment notes from that same date (Tr. 381); (2) treatment notes from April 2020 wherein she complained of pain in her joints that improves with Ibuprofen (Tr. 378);

(3) her own testimony that she experiences fatigue, and that she would be unable to work full-time even if she could alternate between sitting and standing (Tr. 38-39); and (4) the Third Party Function Report completed by her sister (Tr. 238-45), wherein her sister indicated that Ms. Rose has stiffness, pain, fatigue, confusion, depression, memory loss, decreased concentration, decreased understanding, and swollen extremities. (ECF Doc. No. 9, PageID # 456-57). Ms. Rose also asserts that the ALJ erroneously failed to make any specific findings regarding the severity of her symptoms, and that the ALJ offered only a perfunctory analysis, warranting a remand. (*Id.* at PageID # 457-59).

Ms. Rose alternatively argues that, even if she did not satisfy the criteria of Listing 14.02A, the ALJ "failed to consider the combination of her impairments, combined with her headaches, and the resulting pain[,]" on her ability to perform her past relevant work or any substantial gainful activity on a full-time and sustained basis. (*Id.* at PageID # 459). Ms. Rose further argues that the ALJ failed to consider whether her pain was a disabling condition. (*Id.*).

Regarding her headaches, Ms. Rose argues that the ALJ failed to mention SSR 19-4p, and that the ALJ erred by failing to find that her headaches/migraines satisfied Listing 11.02 A or B. (ECF Doc. No. 9, PageID # 460). In support of her argument, Ms. Rose cites a record from March 2019 (thus, prior to the November 2019 denial of her disability claims) indicating that she "has been having headaches . . . all week," and that Excedrin "helps[.]" (*Id.*; Tr. 312). Ms. Rose also cites her own testimony wherein she testified that she experiences headaches throughout the day, and migraines every other day. (*Id.*; Tr. 40). Ms. Rose concludes that the ALJ failed to develop limitations related to this impairment, and failed to analyze her headaches in accordance with the appropriate Ruling, which resulted in harmful error. (ECF Doc. No. 9, PageID # 461).

### iv.    Analysis

Ms. Rose's argument that the ALJ erred by failing to find that her SLE satisfied Listing

14.02A lacks merit. Initially, I note that Ms. Rose's challenge to the ALJ's decision on the basis that he provided a "perfunctory analysis" (ECF Doc. No. 9, PageID # 458) at Step Three also lacks merit because "[i]t is well-established that a reviewing court conducts a holistic review of the ALJ's decision and may look to findings elsewhere in the opinion to support Step Three conclusions." *Anderson*, 2022 WL 4545188, at *2. As the Commissioner points out, the record reflects largely normal physical examinations (*see, e.g.*, Tr. 279 (09/24/2020), 283-84 (04/14/2020), 299 (12/03/2019)), as well as denials of leg swelling and joint pain (*see, e.g.*, Tr. 277 (09/24/2020), 281 (04/14/2020), 286 (02/18/2020). In December 2019, Dr. Quedding-Pizarro noted that Ms. Rose "on examination is in good health" and, in April 2020, noted that Ms. Rose's SLE was "stable[.]" (Tr. 296, 284). And in April 2020, Dr. Warren indicated that Ms. Rose "continues to note pain in her joints that improves with taking Ibuprofen." (Tr. 378).

Simply put, Ms. Rose has not demonstrated that she could reasonably meet or equal the requirements of Listing 14.02A, nor has she otherwise established that the ALJ's decision in this regard lacks the support of substantial evidence. *Smith-Johnson*, 579 F. App'x at 432 (6th Cir. 2014); *see Mackey v. Comm'r of Soc. Sec.*, No. 16-6743, 2017 WL 6028679, at *1 (6th Cir. Aug. 23, 2017) ("We defer to an ALJ's findings if they are supported by substantial evidence, even if the record also supports an opposite conclusion."); *Greene ex rel. Greene v. Astrue*, No. 1:10-cv-414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence . . . that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence . . . that would allow a reasonable mind to accept the ALJ's conclusion.").

Regarding Ms. Rose's arguments that the ALJ "failed to consider the combination of her impairments, combined with her headaches, and the resulting pain[,]" and that the ALJ failed to consider whether her pain is a disabling condition (ECF Doc. No. 9, PageID # 459), I conclude

that her arguments lack merit. The ALJ considered Ms. Rose's reports of symptoms, including pain, and explained why he found that the prior RFC should remain unchanged. (Tr. 20-23). Ms. Rose has not challenged the records upon which the ALJ relied in making this determination, nor has she developed a meaningful argument in support of her position. *See Sharpe v. Comm'r of Soc. Sec.*, No. 1:20 CV 2732, 2022 WL 2127960, at *4 (N.D. Ohio June 14, 2022) (quoting *Bard v. Brown Cty.*, 970 F.3d 738, 750 (6th Cir. 2020)) ("It is well-settled, however, that '[i]ssues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited.'"). Ms. Rose, therefore, has not met her burden of establishing that the ALJ's decision in this regard lacks the support of substantial evidence. *See Hatchett o.b.o. L.F. v. Saul*, No. 1:20-CV-0237, 2021 WL 616320, at *4 (N.D. Ohio Jan. 19, 2021), *report and recommendation adopted sub nom. Hatchett on behalf of L.F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-237, 2021 WL 615320 (N.D. Ohio Feb. 17, 2021) (emphasis in original) ("[T]he movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports her position, too.").

Regarding Ms. Rose's headaches, her argument that her headaches satisfy Listing 11.02A fails because Listing 11.02A does not apply to headaches. *See* SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019) ("While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (*paragraph B or D* for dyscognitive seizures[.]") (emphasis added). Ms. Rose's argument that her headaches satisfy Listing 11.02B also fails because Ms. Rose has not pointed to specific evidence that demonstrates she reasonably could meet or equal every requirement of that Listing. *Smith-Johnson*, 579 F. App'x at 432 (6th Cir. 2014). Instead, Ms. Rose cites one medical record wherein she complained of "having headaches on the top of her head all week[,]" but ignores the fact that this record is from March 2019 (*i.e.*, it predates the ALJ's November 2019 denial of her disability claims), and

that the same record indicates that she "takes two [E]xcedrin migraine [tablets] a day which helps[.]" (Tr. 312). Ms. Rose also cites her hearing testimony wherein she testified that she experiences migraines "every other day[,]" but Ms. Rose also testified that the frequency of her headaches "just depends; I can't really say how often." (Tr. 40-41). When asked what treatment she was receiving for her migraines, Ms. Rose responded that she takes Ibuprofen. (Tr. 41). Listing 11.02B, however, requires headaches "occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.02B. Ms. Rose has not demonstrated that she could reasonably meet of equal that requirement. Moreover, the record indicates that Ms. Rose repeatedly denied headaches. (*See*, *e.g.*, Tr. 277 (09/24/2020), 281 (04/14/2020), 286 (02/18/2020), 296 (12/03/2019)). Ms. Rose, therefore, has not demonstrated any reversible error in the ALJ's analysis of her headaches.

For the foregoing reasons, Ms. Rose's third assignment of error lacks merit.

### 4.  Ms. Rose's Fourth Assignment of Error

In her fourth assignment of error, Ms. Rose argues that the ALJ's RFC was not supported by substantial evidence because the ALJ erroneously found that she could still perform her past relevant work. (ECF Doc. No. 9, PageID # 461). For the following reasons, I conclude that Ms. Rose's argument lacks merit.

### i.      Step Four

As previously noted, at Step Four of the sequential analysis, the claimant has the burden to establish that she is unable to perform her past relevant work in light of her RFC. 20 C.F.R. § 404.1520(a)(4)(iv).

### ii.     The ALJ's Analysis

At Step Four, the ALJ concluded that Ms. Rose "is capable of performing past relevant work as a customer service representative and collection clerk." (Tr. 23). The ALJ explained that "[t]his work does not require the performance of work-related activities precluded by the

26

claimant's residual functional capacity[.]" (*Id.*). The ALJ explained:

> The claimant has past relevant work as a customer service representative and collection clerk (Exhibits B1A, B5D and testimony). At the hearing, the vocational expert described this work as follows: customer service representative, DOT 205.362-026, skilled work (SVP 6) generally performed at the light exertional level; and collection clerk, DOT 241.357-010, skilled work (SVP 5) generally performed at the sedentary exertional level. The undersigned finds that these jobs constitute the claimant's past relevant work because the claimant performed these jobs within the past 15 years, at earnings which reached the level of substantial gainful activity, and long enough to learn the work.
>
> In comparing the claimant's residual functional capacity with the demands of this work, the vocational expert expressed the opinion that the claimant could perform any of this work. The undersigned accepts the vocational expert's testimony because it is based on her professional experience and because it is consistent with the Dictionary of Occupational Titles and the Selected Characteristics of Occupations (see SSR 00-04p). Accordingly, the undersigned finds that the claimant is able to perform her past relevant work as a customer service representative and as a collection clerk.
>
> Notably, the undersigned ended the hearing because of persistent, repetitive and badgering questions posed by the representative to the vocational expert. Specifically, the undersigned finds the testimony of the vocational expert to be consistent with the Dictionary of Occupational Titles and Selected Characteristics of the Dictionary of Occupational Titles, and is consistent with her extensive professional experience as a Vocational Expert (Exhibit B11E).

(*Id.*).

### iii.     Ms. Rose's Arguments

Ms. Rose argues that the ALJ failed to consider the effects of her symptoms related to her SLE, and the fact that she needed to elevate her legs due to swelling, on her ability to perform her past relevant work. (ECF Doc. No. 9, PageID # 461). In support of her argument, Ms. Rose cites to her sister's Third Party Adult Function Report, wherein her sister indicated that Ms. Rose has stiffness, pain, fatigue, confusion, depression, decreased concentration, memory loss, decreased understanding, and swollen extremities. (*Id.* at PageID # 461-62; Tr. 238-45).

Ms. Rose also argues that the ALJ erred by ending the hearing during her counsel's cross-examination of the VE, which prevented her counsel from questioning the VE regarding these

limitations. (*Id.* at PageID # 462). Ms. Rose asserts that the ALJ's failure to allow her counsel to fully question the ALJ violated her due process rights, and resulted in the RFC not being supported by substantial evidence because the RFC does not consider all of her documented limitations. (*Id.*). Ms. Rose, therefore, concludes that a remand is warranted. (*Id.*).

*iv.*     ***Analysis***

Ms. Rose's arguments lack merit. Ms. Rose has not demonstrated that additional limitations beyond those contained in the RFC were required, or that the ALJ's Step Four decision is not supported by substantial evidence. While Ms. Rose points to some evidence in support of her position, the movant bears the burden of demonstrating that the ALJ's analysis lacks substantial evidence, not merely that substantial evidence supports her position. *See Greene ex rel. Greene*, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Here, Ms. Rose primarily relies upon her own testimony regarding her need to elevate her legs, as well as her sister's Third Party Adult Function Report. (ECF Doc. No. 9, PageID # 461). The ALJ specifically indicated that he considered this evidence. (Tr. 20, 22). The ALJ, however, concluded that the record did not support a change in Ms. Rose's prior RFC, and that Ms. Rose could perform her past relevant work. (Tr. 23). Ms. Rose has not established that the ALJ erred by doing so.

Additionally, while Ms. Rose now challenges the ALJ's decision to end the hearing after her counsel continued questioning the VE regarding the definition of "reaching" - despite repeated warnings from the ALJ (Tr. 50-54) - Ms. Rose did not request the ALJ's removal, nor did she raise this issue before the Appeals Council. Ms. Rose, therefore, cannot raise this issue for the first on appeal to this Court. *See Wells v. Apfel*, 234 F.3d 1271, 2000 WL 1562845, at *5-6 (6th Cir. 2000) (holding that allegations of bias against the ALJ for ending the claimant's counsel's cross-examination of the VE were waived because the claimant did not "exhaust his administrative remedies on the issue of bias[,]" including requesting the ALJ's removal and/or raising the issue

28

before the Appeals Council). And even if Ms. Rose could raise this issue now, there is no reason to believe that the ALJ's decision would have changed had Ms. Rose's counsel been permitted to continue questioning the VE. *Id.* at *6 (noting that the ALJ's behavior did not defeat the evidence in the record that supported the ALJ's ultimate decision); *see Young v. Apfel*, 40 F. App'x 157, 163-64 (6th Cir. 2002) (addressing an allegation that the ALJ prematurely terminated the cross-examination of the VE, and concluding that "[t]here is no reason to believe that the ALJ's decision would have changed had this line of questioning continued."); *see also N.L.R.B. v. Baddour, Inc.*, 848 F.2d 193, 1988 WL 49075, at *2 (6th Cir. 1988) ("[A]n A.L.J. possesses wide latitude in the conduct of the hearings before him regarding direct and cross-examination, the handling of objections, and arguments of counsel."). Ms. Rose, therefore, has not established that she is entitled to the remand that she requests. Accordingly, I conclude that Ms. Rose's fourth assignment of error lacks merit for the foregoing reasons.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the ALJ's decision.

Dated: February 3, 2023                    */s Jennifer Dowdell Armstrong*
                                            Jennifer Dowdell Armstrong
                                            U.S. Magistrate Judge

## VII.   NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections**

> **within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).